**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **DAVID J.,**[1]<br>**Plaintiff,**<br>**v.**<br>**COMMISSIONER OF SOCIAL SECURITY,**<br>**Defendant.** | **Case No. 25–cv–07138–ESK**<br><br>**OPINION** |

**KIEL, U.S.D.J.**

**THIS MATTER** is before the Court on plaintiff David J.'s appeal (ECF No. 1) from the final decision of the Commissioner of the Social Security Administration (Commissioner) denying plaintiff's application for Social Security Disability Insurance Benefits (ECF No. 4–2 pp. 9–48). For the following reasons, the Commissioner's decision will be **VACATED** and this matter **REMANDED**.

## I. BACKGROUND

Because the record is voluminous, I set forth only the facts necessary for context and relevant to the issues on appeal.

On September 22, 2023, plaintiff filed an application for benefits and disability insurance benefits. (*Id.* p. 12.) The application was denied initially on December 26, 2023 and on reconsideration on March 27, 2024. (*Id.*) Administrative Law Judge (ALJ) Lisa Hibner Olson held a hearing on May 14, 2024, at which plaintiff and a vocational expert testified. (*Id.* pp. 12, 56–101.)

[1] Due to the significant privacy concerns in Social Security cases, any nongovernmental party will be identified and referenced solely by first name and last initial in opinions issued in the United States District Court for the District of New Jersey. *See* D.N.J. Standing Order 2021–10.

On February 13, 2025, the ALJ issued a decision unfavorable to plaintiff, concluding that he was not disabled within the meaning of the Social Security Act (the Act). (*Id.* pp. 9–48.) On April 18, 2025, the Appeals Council denied plaintiff's request for review (*id.* pp. 2–8), making the February 2025 decision the Commissioner's final decision.

## II. LEGAL STANDARD

### A. <u>Standard Governing Benefits</u>

The Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010). The analysis proceeds as follows:

> At step one, the ALJ determines whether the claimant is performing "substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If [the claimant] is, [the claimant] is not disabled. *Id.* Otherwise, the ALJ moves on to step two.
>
> At step two, the ALJ considers whether the claimant has any "severe medically determinable physical or mental impairment" that meets certain regulatory requirements. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). A "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* §§ 404.1520(c), 416.920(c). If the claimant lacks such an impairment, [the claimant] is not disabled. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If [the claimant] has such an impairment, the ALJ moves on to step three.
>
> At step three, the ALJ decides "whether the claimant's impairments meet or equal the requirements of an impairment listed in the regulations" [(Listings)]. *Smith*, 631 F.3d at 634. If the claimant's impairments do, [the claimant] is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii),

> 416.920(a)(4)(iii). If [the claimant does] not, the ALJ moves on to step four.
>
> At step four, the ALJ assesses the claimant's "residual functional capacity" (RFC) and whether he can perform his [or her] "past relevant work." *Id.* §§404.1520(a)(4)(iv), 416.920(a)(4)(iv). A claimant's "[RFC] is the most [the claimant] can still do despite [the claimant's] limitations." *Id.* §§404.1545(a)(1), 416.945(a)(1). If the claimant can perform … past relevant work despite [the claimant's] limitations, [the claimant] is not disabled. *Id.* §§404.1520(a)(4)(iv), 416.920(a)(4)(iv). If [the claimant] cannot, the ALJ moves on to step five.
>
> At step five, the ALJ examines whether the claimant "can make an adjustment to other work[,]" considering his "[RFC,] … age, education, and work experience." *Id.* §§404.1520(a)(4)(v), 416.920(a)(4)(v). That examination typically involves "one or more hypothetical questions posed by the ALJ to [a] vocational expert." *Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984). If the claimant can make an adjustment to other work, [the claimant] is not disabled. 20 C.F.R. §§404.1520(a)(4)(v), 416.920(a)(4)(v). If [the claimant] cannot, [the claimant] is disabled.

*Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 201 (3d Cir. 2019).

### B. Standard of Review

A reviewing court may enter "a judgment affirming, modifying, or reversing the decision of the Commissioner [], with or without remanding the cause for a rehearing." 42 U.S.C. §405(g). Factual findings, "if supported by substantial evidence, shall be conclusive." *Id.*; *see also Appau v. Comm'r Soc. Sec.*, 847 F. App'x 149, 151 (3d Cir. 2021) ("Like the District Court, we must uphold a final agency determination unless we find that it is not supported by substantial evidence in the record." (quoting *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005))). Review of an ALJ's decision "is highly deferential" and "[t]he substantial-evidence threshold 'is not high.'" *Sisco v. Comm'r Soc. Sec.*, 840 F. App'x 685, 687 (3d Cir. 2020) (quoting *Biestek v. Berryhill*, 587 U.S.

97, 103 (2019)). "Substantial evidence 'means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."'" *Id.* (quoting *Biestek*, 587 U.S. at 103). Courts are bound by an ALJ's findings so long as they are supported by substantial evidence even if the court would have decided the matter differently. *See Taylor v. Comm'r of Soc. Sec.*, 826 F. App'x 224, 226 (3d Cir. 2020).

An ALJ must sufficiently develop the record and explain findings in order to permit meaningful review when the decision is read as a whole. *Cosme v. Comm'r Soc. Sec.*, 845 F. App'x 128, 132 (3d Cir. 2021). In so doing, an ALJ need not use any particular language or format. *Id.* Though there is deference afforded to the ALJ's evaluation of evidence, witnesses, and expert opinions, "remand is necessary 'where we cannot ascertain whether the ALJ truly considered competing evidence, and whether a [plaintiff's] conditions, individually and collectively, impacted' his ability to work." *Grier v. Comm'r Soc. Sec.*, 822 F. App'x 166, 170 (3d Cir. 2020) (quoting *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 506 (3d Cir. 2009)).

## III. THE ALJ DECISION

At step one, the ALJ found that plaintiff had not engaged in any substantial gainful activity. (ECF No. 4–2 p. 14.)

At step two, the ALJ determined that plaintiff had the following severe impairments: disorders of the skeletal spine, migraine, trauma- and stressor-related disorders, and alcohol use disorder secondary to trauma- and stressor-related disorders. (*Id.* p. 14.)

At step three, the ALJ considered various Listings and determined that though plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity" of any of the impairments listed by the regulations. (*Id.* p. 20.) Specifically, the ALJ determined that plaintiff's impairments did not meet the criteria for: Listings 1.15 (Disorders of the Skeletal

Spine Resulting in Compromise of a Nerve Root), 1.16 (Lumbar Spinal Stenosis Resulting in Compromise of the Cauda Equina), 1.18 (Abnormality of a Major Joint in Any Extremity), listing category 11.00 (Neurological Disorders), or listings 12.04 (Depressive, Bipolar, and Related Disorders), 12.06 (Anxiety and Obsessive-Compulsive Disorders), or 12.15 (Trauma- and Stressor-Related Disorders). (*Id.* p. 21.)

At step four, the ALJ concluded that plaintiff had the RFC to perform light work, with certain additional capabilities and limitations, including:

> Occasionally climb ramps or stairs. Occasionally climb ladders, ropes[,] or scaffolds. Occasionally balance, stoop, kneel, crouch[,] and crawl. Avoid concentrated exposure to noise and light. No hazards. Work limited to simple, routine tasks. Work in a low stress job, defined as having only occasional decision-making and only occasional changes in the work setting. Work with occasional judgment required on the job. Only occasional interaction with the public and co-workers. Limited to occasional, brief interaction with supervisors with no over the shoulder type of supervision.

(*Id.* p. 26.)

Upon summarizing plaintiff's testimony, the ALJ determined that plaintiff's "actions and admissions reveal that he is not as limited as he alleged from a physical or mental health standpoint." (*Id.* p. 35.) For example, the ALJ noted that plaintiff could successfully take care of his ailing wife, drive without difficulty, take care of his children, and read the Bible to his children every night. (*Id.* pp. 34–35.) The ALJ further noted that "the record … documents [plaintiff] attending medical/mental health appointments, and fails to reveal any alleged understanding, memory, attention, concentration, or social interaction issue[,]" or physical symptom preventing him from receiving care. (*Id.* p. 35.)

At step five, the ALJ considered plaintiff's background, RFC, and vocational expert testimony to determine that plaintiff was "unable to perform any past relevant work" as a corrections officer as that work is actually or

generally performed. (*Id.* pp. 40–41.) But the ALJ further found that plaintiff can adjust "to other work that exists in significant numbers in the national economy," such as package sorter, office helper, and mail room clerk. (*Id.* pp. 42, 43.) Accordingly, the ALJ found that plaintiff was not disabled.

## IV. DISCUSSION

Plaintiff raises three challenges to the ALJ's decision. (ECF No. 7 (Mov. Br.) pp. 21–44.) First, plaintiff argues that the ALJ improperly rejected the opinions of physicians (*Id.* pp. 21–33.) Second, plaintiff argues that the ALJ erred by finding plaintiff's statements regarding the intensity, persistence, and limiting effects of his symptoms inconsistent with the record. (*Id.* pp. 33–41.). Third, plaintiff argues that the ALJ failed to include all of plaintiff's limitations in the RFC. (*Id.* pp. 41–44.) The Commissioner filed an opposition (ECF No. 11 (Opp'n Br.)), to which plaintiff filed a reply (ECF No. 12 (Reply Br.).)

### A. <u>Medical Opinions</u>

ALJs must assess the persuasiveness of medical opinions and prior administrative findings based on the five factors enumerated in 20 C.F.R. § 404.1520c. *Lynch v. Comm'r Soc. Sec.*, No. 23–1982, 2024 WL 2237961, at *2 (3d Cir. May 17, 2024). Those factors are: (1) supportability; (2) consistency; (3) relationship with the plaintiff; (4) specialization; and (5) other factors. 20 C.F.R. § 404.1520c(c). Supportability and consistency are the two most important factors when assessing persuasiveness. *Id.* § 404.1520c(a). For supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(1). Likewise, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is

with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(2).

As stated above, an ALJ need not defer to any particular medical opinions or findings. *See id.* § 404.1520c(a). Instead, the ALJ must articulate how they considered supportability and consistency when determining the persuasiveness of each medical opinion. *Id.*; *Lynch*, 2024 WL 2237961, at *2.

Plaintiff argues that the ALJ committed error by rejecting the opinions of four treating and examining doctors (Medical Opinions), all of whom suggested that plaintiff had functional limitations that are more restrictive than those included in his RFC. These Medical Opinions come from Drs. John Listerud, John D'Alessandro, David Raush, and Mitchell Gottsagen.[2] (Mov. Br. pp. 21–28.) Specifically, plaintiff argues that the ALJ failed to include enough detail when evaluating supportability and consistency of the Medical Opinions. (*Id.* p. 28.) For example, plaintiff argues that ALJs must cite to a doctor's own examinations for supportability and cite to other specific record evidence (such as the opinions of other providers) when evaluating consistency. (*See* Reply Br. pp. 6–7.)

The Commissioner disagrees, arguing that the ALJ's analysis was appropriate and complete (Opp'n Br. pp. 7–10), in part because the ALJ did not err by weaving supportability and consistency through his analysis rather than having discrete paragraphs devoted to supportability and consistency. (Opp'n Br. pp. 9–10 (citing *Zaborowski v. Comm'r of Soc. Sec.*, 115 F. 4th 637, 639 (3d Cir. 2024).)

[2] Plaintiff also takes issue with the ALJ's rejection of the opinion of Dr. Amit Mukherji (*see* Mov. Br. pp. 28–33), but because I find harmful error with the other Medical Opinions, I need not address this argument.

I agree with plaintiff. Here, the ALJ failed to adequately explain how he considered the supportability and consistency factors when analyzing the Medical Opinions. (*See* ECF No. 4–2 pp. 38–40.)

### 1. <u>**Dr. John Listerud**</u>

The ALJ explained that Dr. Listerud "completed a medical source statement form in December 2024 in which he stated that [plaintiff's] ability to understand, remember, and carryout instructions is not affected[, but] [h]is ability to interact appropriately with supervision, co-workers, and the public, as well as respond to changes in the routine work setting is affected." (*Id.* p. 38 (citing Exhibit 9F).) The ALJ found Dr. Listerud's opinion "not persuasive." (*Id.* p. 40.)

As to supportability, the ALJ stated that "Dr. Listerud noted diagnos[e]s, symptoms, and observations in support of his opinion," but "none of [these] doctors [including Dr. Listerud] set forth an opinion containing specific work-related mental limitations." (*Id.* p. 39.)

The ALJ erred in two respects. First, by employing boilerplate language like "diagnoses, symptoms, and observations," without any additional facts or citations to pages in the administrative record explaining how Dr. Listerud's own records supported his opinions, the ALJ failed to sufficiently explain his reasons for discounting Dr. Listerud's opinion and rendered me unable to conduct a "meaningful review" of the decision. *Cosme*, 845 F. App'x at 132; *see Debby D. v. Bisignano*, No. 24–7776, 2026 WL 1552192, at *8 (D.N.J. June 2, 2026) (Pollack, U.S.M.J.) (remanding when the ALJ's supportability finding merely stated that the doctor's "clinical findings … do not support the assessed limitations" without any further explanation or citations to the record).

Second, the ALJ's contention that Dr. Listerud failed to "set forth an opinion containing specific work-related mental limitations" is not correct. "The basic mental demands of competitive, remunerative, unskilled work

include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." SSR 85–15, 1985 WL 56857. Dr. Listerud's medical source statement checked boxes indicating no restrictions or limitations for plaintiff in any of these areas. (ECF No. 4–10 p. 149.) The ALJ's conclusion about the supportability of Dr. Listerud's opinions is not supported by substantial evidence. *See Gleason v. Saul*, No. 19–3713, 2020 WL 1975378, at *6 (E.D. Pa. Apr. 24, 2020) ("Mistakes and factual errors are not substantial evidence to support an ALJ's decision."). And this error is harmful because the opinions of Dr. Listerud, if not discounted, could have caused the ALJ to find that plaintiff has an RFC with greater limitations. *See, e.g.*, *Nicholas D. v. Comm'r of Soc. Sec.*, No. 23–03139, 2024 WL 3771825, at *6 (D.N.J. Aug. 13, 2024) (finding ALJ's conclusion not supported by substantial evidence and harmful to the plaintiff when the ALJ's supportability analysis relied on records from other doctors).

As to consistency, the ALJ noted that some of Dr. Listerud's conclusions were consistent, but "the extent of limitations otherwise suggested in Dr. Listerud's opinion is inconsistent with the record; in other words, the claimant is not as limited as the remaining portions of Dr. Listerud's opinion otherwise suggests." (ECF No. 4–2 p. 39.) As she did with supportability, the ALJ uses conclusory language with no citations or details as to which opinions are inconsistent with the record, how they are inconsistent, and what other record evidence shows such an inconsistency. Because the ALJ failed to sufficiently explain her reasons for discounting Dr. Listerud's opinion as inconsistent with the record, I am unable to conduct a "meaningful review" of the decision. *See Cosme*, 845 F. App'x at 132; *Debby D.*, 2026 WL 1552192, at *8.

### 2. Drs. John D'Alessandro, David Raush, and Mitchell Gottsagen

After the ALJ summarized the opinions of Drs. D'Alessandro, Raush, and Gottsagen, she addressed supportability and consistency.

> … Drs. D'Alessandro and Raush set forth their opinions after setting forth the findings from their exams and the claimant's subjective allegations, both of which presumably are the support for their opinions.
>
> However, none of [these] doctors set forth an opinion containing specific work-related mental limitations.
>
> [T]urning to consistency, … the extent of limitations vaguely suggested in the opinions of Drs. D'Alessandro, Gottsagen[,] and Raush is inconsistent with the record; in other words, the claimant is not as limited as their opinions vaguely suggest overall. For example, despite alleged symptoms, alleged medication side effects, and the above-detailed abnormal objective findings and treatment history, the record, since the alleged onset date, fails to reveal a repeated pattern of emergency room presentations or hospitalizations due to mental health or exam findings of tangentiality, circumstantially, angry, aggressive[,] or hostile behavior, abnormal memory, inattentiveness, or impulsivity (Exhibits 1F–17F).
>
> Therefore, in light of the above, the opinions of Dr. Listerud, D'Alessandro, Gottsagen[,] and Raush are not persuasive.

(ECF No. 4–2 pp. 39–40.)

On supportability, the ALJ states in conclusory fashion that Drs. D'Alessandro and Raush "presumably" supported their opinions with exam findings and plaintiff's subjective allegations, and the ALJ does not address the supportability of Dr. Gottsagen's opinion at all. (*Id.* p. 39.) As with Dr. Listerud, the ALJ here relied on conclusory statements and conjecture rather than details and citations to the record when addressing supportability of these opinions, if she addressed it at all. Without more, I cannot meaningfully

review the ALJ's determination that these doctors' opinions were unpersuasive. *See Debby D.*, 2026 WL 1552192, at *8.

On consistency, the ALJ states generally that the opinions of Drs. D'Alessandro, Raush, and Gottsagen are inconsistent with the record, but she fails to state *what* about the opinions is inconsistent. Further, the ALJ lists possible evidence that plaintiff could have submitted but did not, such as hospitalizations or emergency room (ER) visits due to mental health issues. (ECF No. 4–2 pp. 39–40.) But the ALJ fails to explain why ER visits or hospital stays are required to find a disability based on mental health. As with supportability, I cannot meaningfully review conclusory statements, particularly as here when the ALJ cites Exhibits 1F–17F—a range of nearly 1300 pages—rather than point to specific and discrete inconsistencies in the record. I find the ALJ's supportability and consistency statements for Drs. D'Alessandro, Raush, and Gottsagen were harmful because had the ALJ not discounted the opinions, the ALJ may have included more limitations in the RFC. *See Nicholas D.*, 2024 WL 3771825, at *6.

Accordingly, remand is appropriate to require the ALJ to consider plaintiff's Medical Opinions consistent with the applicable regulations and this Opinion. The ALJ may very well arrive at the same outcome, but the ALJ must provide additional explanation for his decision.

Because remand is warranted, I need not address plaintiff's other arguments.

## V. CONCLUSION

For the reasons stated above, the Commissioner's decision denying plaintiff's application for benefits is **VACATED** and this matter is **REMANDED** for further proceedings consistent with this Opinion. An appropriate order will follow.

*/s/ Edward S. Kiel*
**EDWARD S. KIEL**
**UNITED STATES DISTRICT JUDGE**

Dated: July 30, 2026